**David Weitman, Esq.**
**Texas State Bar No. 21116200**
**John E. Garda, Esq.**
**Texas State Bar No. 00793780**
**K&L GATES LLP**
**1717 Main Street, Suite 2800**
**Dallas, Texas 75201**
**Telephone (214) 939-5500**
**Telecopy: (214) 939-6100**

**ATTORNEYS FOR WELLS FARGO CAPITAL FINANCE, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **R.E. LOANS, LLC,** | ) | **Case No. 11-35865-BJH** |
| **R.E. FUTURE, LLC, and** | ) | |
| **CAPITAL SALVAGE, a California** | ) | **Jointly Administered** |
| **corporation,** | ) | |
| | ) | |
| Debtors. | | |
| | | |
| **WELLS FARGO CAPITAL FINANCE,** | ) | |
| **LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Adversary Proceeding No. 11-_____** |
| **vs.** | ) | |
| | ) | |
| **GORDON NOBLE, ARLENE DEA** | ) | |
| **DEELEY, FREDRIC C. MENDES,** | ) | |
| **NANCY RAPP, PHILLIP CANTOR** | ) | |
| **and IRENE LEE,** | ) | |
| | | |
| Defendants, | | |
| | | |
| **R.E. LOANS, LLC,** | | |
| | | |
| Nominal Defendant. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND TEMPORARY INJUNCTION

Plaintiff Wells Fargo Capital Finance, LLC f/k/a Wells Fargo Foothill, LLC ("Wells Fargo") files the following Complaint for Declaratory Relief and Temporary Injunction (this "Complaint") in this adversary proceeding (this "Adversary Proceeding") and, in support hereof, Wells Fargo alleges as follows:

## I.
## NATURE OF THIS ADVERSARY PROCEEDING
## AND RELIEF REQUESTED

1.      This Adversary Proceeding arises out of a present and actual controversy between Wells Fargo and Gordon Noble, Arlene Dea Deeley, Fredric C. Mendes, Nancy Rapp, Philip Cantor, Irene Lee and others similarly situated (collectively, the "Defendants") arising from alleged conduct by Wells Fargo associated with a line of credit facility provided by Wells Fargo to R.E. Loans, LLC ("R.E. Loans") in July of 2007.

2.      In September of 2011, a class action lawsuit was initiated (the "Noble Class Action Lawsuit") by the filing of a complaint (the "Noble Complaint") against, among others, Wells Fargo, in Alameda County, California Superior Court by certain holders of promissory notes issued by each of Mortgage Fund '08 LLC ("MF08") and R.E. Loans.  The Noble Complaint was subsequently amended (the "Noble First Amended Complaint"), and the Noble First Amended Complaint contains twelve (12) causes of action against a variety of defendants.

3.      Wells Fargo is named as a defendant in the Noble First Amended Complaint with respect to three (3) of the causes of action: (i) Aiding and Abetting Breach of Fiduciary Duty; (ii) Violation of Unfair Competition Law Business & Professional Code Section 17200; and (iii) Secondary Liability for Securities Fraud.  A true and accurate copy of the Noble First Amended Complaint is attached hereto as Exhibit "A" and is incorporated herein by reference.

4.      In October of 2011, a second class action lawsuit was initiated (the "Mendes Class Action Lawsuit," by the filing of a complaint (the "Mendes Complaint") against, among others, Wells Fargo in Alameda County, California Superior Court by certain holders of promissory notes issued by each of R.E. Loans and MF08 (the "Mendes Plaintiffs," and with the Noble Plaintiffs, the "Class Action Plaintiffs").   The Mendes Complaint was subsequently amended (the "Mendes First Amended Complaint," and with the Noble First Amended Complaint, the "Class Action Complaints").   The Mendes First Amended Complaint contains ten (10) causes of action against a variety of defendants.

5.      Wells Fargo is named as a defendant in the Mendes First Amended Complaint with respect to three (3) of the causes of action: (i) Aiding and Abetting Fraud; (ii) Aiding and Abetting Breach of Fiduciary Duty; and (iii) Violation of Unfair Business Practices California Business & Professions Code Section 17200.   A true and accurate copy of the Mendes First Amended Complaint is attached hereto as Exhibit "B" and is incorporated herein by reference.

6.      On November 3, 2011, Alameda County, California Superior Court Judge Steven A. Brick issued a Tentative Case Management Order in the Noble Lawsuit, a copy of which is attached hereto as Exhibit "C" and is incorporated herein for all purposes.   The Tentative Case Management Order affords the parties the opportunity to seek guidance from this Court as to whether the claims asserted in the Noble Lawsuit are subject to the automatic stay 11 U.S.C. § 362(a).

7.      11 U.S.C. § 362(a)(1) imposes an automatic stay of any proceeding commenced or that could have been commenced against the debtor at the time of the filing of the Chapter 11 proceeding.   11 U.S.C. § 362(a)(3) provides that the filing of a bankruptcy petition "**operates as a[n] [automatic stay] applicable to all entities, of…any act to obtain possession of property of the estate or of property from the estate.**"   11 U.S.C. § 362(a)(3) (emphasis added).   The

stay extends to **any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor**, including causes of action that could have been raised by the debtor as of the commencement of the bankruptcy case.

8.      The claims asserted against Wells Fargo in the Class Action Complaints (collectively, the "Class Action Claims") are claims which could have been raised by the Debtor R.E. Loans as of the commencement of the R.E. Loans' bankruptcy proceedings.  As such, the Class Action Claims are property of R.E. Loans' bankruptcy estate pursuant to 11 U.S.C. § 541, and as property of the bankruptcy estate, the Class Action Claims are subject to the automatic stay of 11 U.S.C. § 362(a)(3) arising from the commencement of the bankruptcy proceedings of R.E. Loans.

9.      In addition, R.E. Loans agreed to indemnify Wells Fargo for any and all claims, including defense costs, arising in relation to the line of credit provided by Wells Fargo to R.E. Loans.  The legal expenses incurred and continuing to accrue in the Class Action Complaints and any liability or judgment entered against Wells Fargo are subject to payment by the R.E. Loans' bankruptcy estate -- as part of Wells Fargo's secured claim against the R.E. Loans' bankruptcy estate -- pursuant to the indemnity agreement in favor of Wells Fargo.  As a result of R.E. Loans' indemnity obligations to Wells Fargo, and the corresponding direct liability of R.E. Loans, prosecution of the Class Action Claims against Wells Fargo is tantamount to a direct action against R.E. Loans and barred by the automatic stay under § 362(a) of the Bankruptcy Code, or as more fully described below, such claims constitute property of the R.E. Loans' bankruptcy estate.

10.     This Complaint seeks: (i) a declaratory judgment declaring that (a) some or all of the Class Action Claims are property of the bankruptcy estate of R.E. Loans pursuant to 11 U.S.C. § 541, and as such, are subject to the automatic stay set forth in 11 U.S.C. § 362(a)(3)

arising from the commencement of the bankruptcy proceedings of R.E. Loans, (b) because Wells Fargo is entitled to contractual indemnification from R.E. Loans with respect to the Class Action Claims, and the corresponding depletion of estate assets due to the indemnification obligations of R.E. Loans to Wells Fargo, the Class Action Complaints are stayed under § 362(a) of the Bankruptcy Code and Wells Fargo is entitled to reimbursement of its reasonable and necessary attorneys' fees and defense costs incurred as a result of defending the Class Action Claims and in bringing this adversary proceeding from the bankruptcy estate of R.E. Loans, and (c) the Class Action Claims must proceed, if at all, only in connection with the underlying bankruptcy case of R.E. Loans in this Court; (ii) the entry of a temporary injunction and/or other applicable injunctive relief prohibiting the Class Action Claims against Wells Fargo from continuing in Alameda County, California Superior Court until R.E. Loans has confirmed its plan of reorganization in its bankruptcy proceedings in this Court; and (iii) an order that the Class Action Claims and any similar claims against Wells Fargo must proceed, if at all, only in connection with the underlying bankruptcy case of R.E. Loans in this Court.

## II.

## JURISDICTION AND VENUE

11.     On September 13, 2011 (the "Petition Date"), R.E. Loans, R.E. Future, LLC ("R.E. Future"), and Capital Salvage, a California corporation ("Capital Salvage") (collectively, the "Debtors"), filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

12.     This Court is granted subject-matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and (e).  This Adversary Proceeding is a core proceeding under

28 U.S.C. § 157(b)(2)(A), (C), (E), and (O), because it raises significant issues that implicate the administration of the Debtors' estates.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

14.    Pursuant to §§ 362(a) and 105(a) of the Bankruptcy Code and 28 U.S.C. § 2201, this Court can enter the declaratory and injunctive relief sought in this Complaint because this case presents an actual controversy and is within this Court's jurisdiction as stated above.

15.    To the extent that any of the Class Action Claims against Wells Fargo are valid, an assertion that Wells Fargo categorically denies, such claims are tantamount to a direct action against R.E. Loans, are property of the bankruptcy estate of R.E. Loans within the meaning of 11 U.S.C. § 541(a)(1), or are so intertwined with the claims in the underlying bankruptcy proceedings that they are subject to the automatic stay of § 362(a).

## III.

## PARTIES

16.    R.E. Loans is a California limited liability company.  Following the entry of a certain Final Order Authorizing Employment of Mackinac Partners and James A. Weissenborn From the Petition Date to Provide Interim Management and Management Assistance to the Debtors Pursuant to 11 U.S.C. § 363 (the "Management Order"), entered by this Court on October 28, 2011 [Docket No. 179], effective as of the Petition Date, (a) Mackinac Partners became the sole manager of R.E. Loans and R.E. Future, (b) James A. Weissenborn became the Chief Restructuring Officer of each of the Debtors; and (c) James A. Weissenborn became the sole director and president of Capital Salvage.  R.E. Loans is named as a nominal defendant in this adversary proceeding because (i) as a result of R.E. Loans' indemnity obligations to Wells Fargo, prosecution of the Class Action Claims against Wells Fargo is tantamount to a direct

action against R.E. Loans and barred by reason of § 362(a) of the Bankruptcy Code, (ii) all or some of such claims are the property of the R.E. Loans' bankruptcy estate pursuant to 11 U.S.C. § 541, and as such, are subject to the automatic stay set forth in 11 U.S.C. § 362(a)(3), (iii) as a result of R.E. Loans' indemnity obligations to Wells Fargo, Wells Fargo is entitled to reimbursement of its reasonable and necessary attorneys' fees and defense costs incurred as a result of defending the Class Action Claims and in bringing this adversary proceeding from the bankruptcy estate of R.E. Loans, and (iv) R.E. Loans is a necessary party to this action.

17.    Plaintiff Wells Fargo f/k/a Wells Fargo Foothill, LLC, is a Delaware limited liability company.

18.    Defendant Gordon Noble is one of the named plaintiffs in the Noble Class Action Lawsuit, and upon information and belief, is an individual resident of Marin County, California.

19.    Defendant Arlene Dea Deeley is one of the named plaintiffs in the Noble Class Action Lawsuit, and upon information and belief, is an individual resident of Alameda County, California.

20.    Defendant Fredric C. Mendes is one of the named plaintiffs in the Mendes Class Action Lawsuit, and upon information and belief, is an individual resident of San Mateo County, California.

21.    Defendant Nancy Rapp is one of the named plaintiffs in the Mendes Class Action Lawsuit, and upon information and belief, is an individual resident of Marin County, California.

22.    Defendant Philip Cantor is one of the named plaintiffs in the Mendes Class Action Lawsuit, and upon information and belief, is an individual resident of Alameda County, California.

23.    Defendant Irene Lee is one of the named plaintiffs in the Mendes Class Action Lawsuit, and upon information and belief, is an individual resident of Contra Costa County, California.

## IV.

## R.E. LOANS' BUSINESS AND LOAN PORTFOLIO[1]

24.    R.E. Loans was, for many years, in the business of providing financing to home builders and developers of real property ("R.E. Loans' Borrowers").  All of the R.E. Loans' loans were initially secured by first-priority deeds of trust or mortgages on real property owned by R.E. Loans' Borrowers. See Weissenborn Declaration ¶ 8.[2]

25.    In 2008, the United States economy in general and real estate development in particular entered into the worst economic downturn since the Great Depression.  Virtually all of the R.E. Loans' Borrowers that had outstanding loan balances due to R.E. Loans in 2008 have defaulted.  As a result, the Debtors have no regular cash flow.  R.E. Loans has worked with many of R.E. Loans' Borrowers in an effort to maximize the recovery on the defaulted loans, but in other instances R.E. Loans has been forced to foreclose.  See Weissenborn Declaration ¶ 10.

26.    As a result of the multiple defaults by R.E. Loans' Borrowers, R.E. Loans has effectively transitioned from being a lender to becoming a property management company.  See Weissenborn Declaration ¶¶ 11-12.

27.    R.E. Loans retained title to certain REO acquired through foreclosure proceedings.  When R.E. Loans acquired property as the result of credit bids at foreclosure sales (the "REO Property"), it transferred title to some of the properties to each of its wholly owned

[1] Paragraphs 24 through 42 are based upon the Weissenborn Declaration, which was filed with this Court on September 13, 2011 (Docket No. 14).

[2] A true and correct copy of the Weissenborn Declaration is attached hereto as Exhibit "D" and is incorporated herein for all purposes.

subsidiaries, Capital Salvage and R.E. Future (the "REO Subsidiaries").  In exchange for each

such transfer, the REO Subsidiary that received title delivered a promissory note payable to

R.E. Loans and secured by the same REO Property.[3]

## V.

## THE DEBTORS' MEMBERS AND FORMER SERVICER

28.      R.E. Loans owns 100% of the issued and outstanding stock of Capital Salvage.

Capital Salvage is a California corporation.  R.E. Loans is the sole member of R.E. Future, which

is a California limited liability company.  See Weissenborn Declaration ¶ 4.

29.      B-4 Partners LLC ("B-4"), a California limited liability company, is the sole

member of R.E. Loans.  The members of B-4 throughout most of the Debtors' history were

Walter Ng, Kelly Ng, Barney Ng, and Bruce Horwitz ("Horwitz"), each of whom owned 25% of

B-4.  Walter Ng was a manager of B-4 at all relevant times before he filed his chapter 11 petition

on May 12, 2011.  Horwitz was also a manager of B-4 until September 24, 2009.  At that time,

Horwitz resigned as a manager of B-4 and sold his 25% interest in B-4 to Kelly Ng.  Kelly Ng

also became a manager of B-4 on September 24, 2009.  As a result, the members of B-4 are

currently Walter Ng (25%), Barney Ng (25%) and Kelly Ng (50%).  Kelly Ng is the manager of

B-4, which is, in turn, the only member and, prior to the Petition Date and the entry of the

Management Order, was the manager of R.E. Loans.  See Weissenborn Declaration ¶ 5.

30.      Until September of 2009, Barney Ng was also the president of Bar-K, Inc., a

California corporation ("Bar-K").  Barney Ng resigned as the President of Bar-K in September of

2009.  At that time Kelly Ng became the president of Bar-K.  Bar-K originated most of

R.E. Loans' loans to R.E. Loans' Borrowers and serviced R.E. Loans' loans until October 1,

---

[3] The one exception to this structure is the property known as "Perdido Key", title to which was conveyed to Capital Salvage.

2010.  Lend, Inc. assumed responsibility for servicing R.E. Loans' notes receivable on October 1,

2010.  Kelly Ng is the President of Lend, Inc.  <u>See</u> Weissenborn Declaration ¶ 6.

VI.

<u>**THE DEBTORS' PRE-PETITION SECURED LENDERS**</u>

31.     R.E. Loans' originally raised the capital to fund the secured loans to R.E. Loans'

Borrowers by selling membership interests in R.E. Loans.  In April of 2007, R.E. Loans stopped

selling membership interests.  <u>See</u> Weissenborn Declaration ¶ 16.

32.      During 2007, R.E. Loans granted two security interests in all notes receivable

held by R.E. Loans.  In July of 2007, R.E. Loans granted a security interest to Wells Fargo in all

or substantially all of R.E. Loans' personal property (consisting primarily of notes receivable and

the collateral securing the repayment of same), which security interest was perfected by the filing

of a UCC-1 Financing Statement with the California Secretary of State on July 6, 2007.  On

December 1, 2007, R.E. Loans completed the exchange offer described below, and granted a

subordinate security interest in all notes receivable held by R.E. Loans to secure the repayment

of the "<u>Exchange Notes</u>," as defined below.  That security interest was perfected by the filing of

a UCC-1 Financing Statement by the collateral agent for the holders of the Exchange Notes (the

"<u>Noteholders</u>") on November 27, 2007.   That security interest is expressly contractually

subordinate to the security interest granted to Wells Fargo under its credit facility.   The

Noteholders' security interest is also junior to Wells Fargo's security interest because the security

interest granted to the Noteholders was granted, filed of record, and perfected after Wells Fargo's

security interest was granted, filed of record, and perfected.  <u>See</u> Weissenborn Declaration ¶ 17.

33.     In July of 2007, Wells Fargo provided an initial $50 million line of credit facility

to R.E. Loans to fund its operations (the "<u>Line of Credit</u>").  Wells Fargo holds a first-priority

perfected security interest in all or substantially all of the Debtors' assets to secure the Line of

Credit.  Availability under the Line of Credit was originally based on a borrowing base formula,

which considered, among other things, the amount owing under eligible notes payable to

R.E. Loans by R.E. Loans' Borrowers. The balance owing to Wells Fargo as of the Petition Date

was approximately $68 million. <u>See</u> Weissenborn Declaration ¶¶17 & 29.

34.     The second-priority security interest in the notes payable by the R.E. Loans

Borrowers to R.E. Loans was granted effective December 1, 2007, pursuant to the form of

exchange notes, the Security Agreement, and the "Exchange Agreement."   The Security

Agreement securing the Exchange Notes expressly provides that the security interest granted to

secure the Exchange Notes is subordinate to the Wells Fargo first-priority security interest.

Section 3.6(b) of the Exchange Agreement reads as follows:

> The lien on [R.E. Loans'] assets established by the security agreement (the
> "***Lien***") will be subordinate to the lien of any Company Borrowings,
> including the WFF Lien.  In addition, the terms of the WFF LOC provide
> for the payment of principal and interest on the WFF LOC on a priority
> basis under specified circumstances from certain income and assets of the
> Company, including from revenues and income generated by Portfolio
> Loans and from proceeds payable to the Company with respect to
> Portfolio Loan principal or the exercise of the Company's rights and
> remedies with respect to the Portfolio Loans.

35.     Company Borrowings is defined at page 2, paragraph E of the Exchange

Agreement to state that R.E. Loans "is specifically authorized to enter into loan agreements and

lines of credit with institutional and other lenders for the purpose of borrowing operating capital

and capital funds in order to make portfolio loans and for such other purposes as the Manager

may determine ( . . . such borrowings shall be collectively referred to as the '***Company***

***Borrowings***')."

36.    The Summary of Reorganization Plan is incorporated into the Confidential Memorandum accompanying the R.E. Loans Reorganization Plan and Note Program, dated October 2007, which was approved by the Exchange Agreement.    The Summary of Reorganization Plan states that "The Note Documents will subordinate the Fund's obligations under the Investor Notes to its obligations as borrower under the WFF Loan Documents." (Addendum Exhibit "L" at page 2).    The "R.E. Loans, LLC Reorganization Plan and Note Program Confidential Memorandum dated October, 2007" also contains several subordination provisions, at page 2 (confirming subordination of the Noteholders' lien on R.E. Loans' assets to "other Company Borrowings, including the WFF Line of Credit"), page 5 ("the WFF Line of Credit will be secured by a senior lien"), and page 13 (the Noteholders' lien is "junior to the liens imposed by Company Borrowings . . ."). See Weissenborn Declaration ¶ 19.

37.    R.E. Loans originally raised the capital to fund the secured loans to R.E. Loans' Borrowers, which are real estate owners and developers, by selling membership interests in R.E. Loans.  In April of 2007, R.E. Loans stopped selling membership interests. As of April of 2007, R.E. Loans had approximately 3,000 members, but its sole manager was B-4 and its loans were being originated and serviced by Bar-K. At that time R.E. Loans had no material debts.  R.E. Loans then entered into the original Loan Agreement with Wells Fargo effective July 10, 2007 to evidence the Line of Credit.  [Docket No. 35].

38.    R.E. Loans thereafter engaged in an exchange offer designed to bring it into compliance with applicable provisions of ERISA and applicable securities laws.    On December 1, 2007, R.E. Loans consummated an exchange offer pursuant to which each member of R.E. Loans, other than B-4, received a promissory note in exchange for the member's membership interest (the "Exchange Notes").  Pursuant to the exchange offer, R.E. Loans issued Exchange Notes in the aggregate face amount of $743 million in exchange for the interests of its

members. Upon information and belief, the dollar amount of the Exchange Notes delivered to each former member was equal to the balance of that member's capital account, including the principal invested and interest accrued but not paid, as of the date the Exchange Offer closed. As of the Petition Date, there were approximately 2,800 Exchange Notes outstanding, held by 1,400 separate individuals or entities. In some instances a single person holds more than one Exchange Note in different capacities or through different accounts, including retirement accounts. See Weissenborn Declaration ¶ 20.

39.    The Exchange Notes issued to the former members have at all times been secured by a second-priority security interest in substantially all of the R.E. Loans' notes receivable, subordinate in all respects to the first-priority security interests in and liens on all or substantially all of the Debtors' assets in favor of Wells Fargo. The Exchange Notes are not secured by any real estate owned by any of the Debtors. The Exchange Notes are payable interest only until December 1, 2012, when they are all due and payable. Noteholders could, however, request prepayment of amounts due to them at any time. R.E. Loans had the right but not the obligation to honor such requests and R.E. Loans had historically honored those requests when R.E. Loans had sufficient liquidity. Shortly after R.E. Loans defaulted under the Wells Fargo Line of Credit and R.E. Loans had limited liquidity, R.E. Loans stopped funding cash distributions to the Noteholders, which payments were at the option of R.E. Loans.

40.    Because Wells Fargo's documentation provided for R.E. Loans' grant to Wells Fargo of a first-priority security interest in all notes payable to R.E. Loans, this includes the notes payable by the REO Subsidiaries. Similarly, because the Noteholders were granted a second-priority security interest in all notes payable to R.E. Loans, this also includes the notes payable by the REO Subsidiaries. See Weissenborn Declaration ¶ 23.

41.    In addition, R.E. Loans granted to Wells Fargo a first-priority deed of trust or mortgage on each of the properties acquired by R.E. Loans through foreclosure sales.[4]   No lien was granted to the Noteholders on any of the real estate acquired by R.E. Loans directly.   See Weissenborn Declaration ¶ 24.

42.    The Exchange Notes and the Line of Credit were both in default for an extended period of time prior to the Petition Date.   Pursuant to the terms and conditions of the operative loan agreements between R.E. Loans and Wells Fargo, Wells Fargo declared a default under the Line of Credit in August of 2008.   After that default was declared, Wells Fargo was under no obligation to make additional advances to R.E. Loans.   The Debtors ceased making interest payments on account of the Exchange Notes during September, 2008.   Between that date and the Petition Date, Wells Fargo and R.E. Loans entered into a series of forbearance agreements during which time Wells Fargo did not exercise its rights or remedies and funded R.E. Loans' operations through optional protective advances.   In early 2010, Wells Fargo was still funding such optional protective advances, based on approved budgets generated by Mackinac Partners, who was engaged in January of 2010 to provide consulting services to R.E. Loans.   See Weissenborn Declaration ¶ 26.

43.    On September 13, 2011, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.   The cases are being jointly administered.

44.    Wells Fargo has provided post-petition financing to the Debtors pursuant to that certain Joint Stipulation and Final Agreed Order: (I) Authorizing Debtors to (A) Obtain Post-Petition Financing on a Super-Priority, Secured and Priming Basis in Favor of Wells Fargo Capital Finance, LLC; (B) Use Cash Collateral on an Interim Basis, (C) Provide Adequate

---

[4] No lien was granted on the Perdido Key property because of the large transfer taxes that would have been incurred for recording such a grant.

Protection to Wells Fargo Capital Finance, LLC and the Noteholders, and (D) Enter into Post-Petition Agreements with Wells Fargo Capital Finance, LLC; (II) Modifying the Automatic Stay entered by the Court on November 23, 2011, together with prior interim financing orders entered by this Court.  [Docket No. 273].

## VII.
## INDEMNIFICATION CLAIMS

45.    Section 11.3 of the Loan and Security Agreement among Wells Fargo, as lender, R.E. Loans and B-4, as borrowers, provides that R.E. Loans and B-4 shall indemnify Wells Fargo for any and all claims arising in relation to the Line of Credit.

46.    Specifically, Section 11.3 of the Loan and Security Agreement provides, in relevant part, that:

> Each Borrower [each of R.E. Loans and B-4] shall pay, indemnify, defend, and hold the Lender-Related Persons [Wells Fargo, together with its Affiliates, officers, directors, attorneys, and agents], and each Participant (each, an "Indemnified Person") harmless (to the fullest extent permitted by law) from and against any and all claims, demands, suits, actions, investigations, proceedings, liabilities, costs, penalties, and damages, and all reasonable fees and disbursements of attorneys, experts and consultants and other costs and expenses actually incurred in connection therewith or in connection with the enforcement of this indemnification (as and when they are incurred and irrespective of whether suit is brought), at any time asserted against, imposed upon, or incurred by any of them (a) in connection with or as a result of or related to the execution, delivery, enforcement, performance, or administration (including any restructuring or workout with respect hereto) of this Agreement, any of the other Loan Documents, or the transactions contemplated hereby or thereby or the monitoring of Borrowers' and their Subsidiaries' compliance with the terms of the Loan Documents, (b) with respect to any investigation, litigation, or proceeding related to this Agreement, any other Loan Document, or the use of the proceeds of the credit provided hereunder (irrespective of whether any Indemnified Person is a party thereto), or any act, omission, event, or circumstance in any manner related thereto…This provision shall survive the termination of this Agreement and the repayment of the Obligations.

## VIII.
## THE CLASS ACTION CLAIMS

47.     The Noble First Amended Complaint was filed on or about November 2, 2011 in Alameda County, California Superior Court against defendants B-4, Bar-K, The Mortgage Fund, LLC ("Mortgage Fund"), Horwitz, Kelly Ng, Greenberg Traurig, LLP ("Greenberg"), and Wells Fargo.

48.     The Noble First Amended Complaint alleges twelve (12) separate causes of action, including, with respect to R.E. Loans:

(i)     Breach of Fiduciary Duties (against Bruce Horwitz, Kelly Ng, B-4 and Bar-K),

(ii)    Aiding and Abetting Breach of Fiduciary Duty (against Greenberg and Wells Fargo),

(iii)   Control Person Liability for California Statutory Securities Fraud (against Horwitz, B-4, Bar-K and Kelly Ng),

(iv)    Secondary Liability for Securities Fraud (against Horwitz, B-4, Bar-K, Kelly Ng, Greenberg and Wells Fargo),

(v)     Fraud (against Horwitz, Kelly Ng, B-4, Bar-K and Greenberg),

(vi)    Violation of Unfair Competition Law Business & Professions Code § 17200 et seq. (against B-4, Bar-K, Kelly Ng, Horwitz, Greenberg and Wells Fargo), and, with respect to MF08:

(vii)   Control Person Liability for California Statutory Securities Fraud (against Mortgage Fund, Horwitz, B-4, Bar-K and Kelly Ng),

(viii)  Secondary Liability for Securities Fraud (against Mortgage Fund, Horwitz, B-4, Bar-K, Kelly Ng and Greenberg),

(ix)    Fraud (against Mortgage Fund, Horwitz, Kelly Ng, B-4, Bar-K and Greenberg),

(x)     Breach of Fiduciary Duty (against B-4, Bar-K, Horwitz and Kelly Ng),

(xi)    Aiding and Abetting Breach of Fiduciary Duty (against Greenberg) and

(xii)   Violation of Unfair Competition Law Business & Professions Code § 17200 et seq. (against Mortgage Fund, B-4, Bar-K, Kelly Ng, Horwitz and Greenberg).

49.    The Mendes First Amended Complaint was filed on or about November 4, 2011 in Alameda County, California Superior Court against defendants B-4, Bar-K, Horwitz, Barney Ng, Kelly Ng, Greenberg, Development Specialists, Inc. ("DSI"), Armanino McKenna, LLP ("Armanino") and Wells Fargo.

50.    The Mendes First Amended Complaint alleges ten (10) separate causes of action, including:

     (i)    Fraud- Intentional Misrepresentation and False Promise (against Horwitz, Barney Ng, Kelly Ng, B-4 Bar-K and Greenberg),

     (ii)    Fraud- Concealment and Suppression of Fact (against Horwitz, Barney Ng, Kelly Ng, B-4 and Bar-K),

     (iii)    Aiding and Abetting Fraud (against Greenberg and Wells Fargo),

     (iv)    Securities Fraud (against B-4, Horwitz, Kelly Ng, and Barney Ng),

     (v)    Aiding and Abetting Securities Fraud (against B-4, Horwitz, Kelly Ng, Barney Ng, and Greenberg),

     (vi)    Breach of Fiduciary Duty (against B-4, Bar-K, Horwitz, Barney Ng and Kelly Ng),

     (vii)    Aiding and Abetting Breach of Fiduciary Duty (against Greenberg, Armanino and Wells Fargo),

     (viii)    Breach of Contract (against DSI),

     (ix)    Negligent Misrepresentation (against Armanino and Greenberg), and

     (x)    Unfair Business Practices (against B-4, Bar-K, Horwitz, Kelly Ng, Barney Ng, Greenberg, Armanino and Wells Fargo).

51.    While the various allegations and causes of action differ somewhat between the Class Action Complaints, generally speaking, the Class Action Complaints are substantially similar, especially as to the claims against Wells Fargo.  To summarize, with respect to the allegations related to Wells Fargo, the Class Action Complaints generally allege that the Managers of R.E. Loans (Bruce Horwitz, Walter Ng, Barney Ng, and Kelly Ng) breached their fiduciary obligations to R.E. Loans itself and the Noteholders by:

- improperly establishing the unauthorized Line of Credit with Wells Fargo,

- wrongfully assigning $250 million of the Fund's portfolio as collateral for the Line of Credit,

- concealing the credit facility and related assignment to Wells Fargo of trust deeds totaling $250 million,

- exhausting the Line of Credit almost immediately in self-dealing transactions, and

- causing the Fund to become illiquid through secret self-dealings and insider distributions.

52.    With respect to the Class Action Claims against Wells Fargo, the Class Action Complaints generally allege that Wells Fargo somehow had a role in the alleged breaches of fiduciary duties by:

(i)    extending the Line of Credit "knowing the Fund Managers were breaching their fiduciary duties to the investors by entering the Loan Agreement and assigning to Wells Fargo assets worth five times as much as the $50 million loan amount,"

(ii)    knowingly or recklessly disregarding that the "Fund Managers lacked authority to enter into the Line of Credit,"

(iii)    making a $50 million loan secured by $250 million of the Fund's mortgage portfolio that was "recklessly inconsistent with the published Offering Circulars,"

(iv)    knowing, based on the Fund's financial statements, that "few, if any" investors were covered by the 12/06 Offering Circular,

(v)    knowing, based on the Fund's financial statements, that R.E. Loans was illiquid and undercapitalized and therefore "likely incapable of performing its obligations and complying with the onerous, non-standard Loan covenants,"

(vi)    negotiating and closing the $50 million Line of Credit on an expedited timetable,

(vii)    permitting use of the Line of Credit to pay fund managers and for other purposes contrary to the stated purpose of the credit facility,

(viii)    allowing Barney Ng to sign loan documents as an officer of R.E. Loans "even though he did not hold this position," and

(ix)    reassigning deeds of trust to the Fund, which sold them to MF08, "to retroactively disguise and re-characterize the MF08 loan as a 'sale' of properties."

Other than these allegations in support of the Aiding and Abetting Breach of Fiduciary Duty claim against Wells Fargo, there are no independent allegations contained in the Class Action Complaints to support the other claims against Wells Fargo -- namely Secondary Liability for Securities Fraud, Aiding and Abetting Fraud, and Violations of the Unfair Business Practices/Competition Law Section 17200.  In any event, all of the claims asserted against Wells Fargo trigger the indemnity obligations of the Debtor R.E. Loans to cover the defense costs that Wells Fargo incurs and any underlying liability or judgment entered against Wells Fargo in the Class Action Complaints as described above.

## IX.
## THE CLASS ACTION CLAIMS AGAINST WELLS FARGO
## ARE TANTAMOUNT TO AN ACTION AGAINST R.E. LOANS AND ARE PROPERTY
## OF THE R.E. LOANS' BANKRUPTCY ESTATE

53.    Although the Class Action Complaints have been amended and pled to explicitly remove R.E. Loans as a named defendant in an apparent attempt to evade the automatic stay provisions of § 362(a) of the Bankruptcy Code, such attempt must fail, at least as it relates to the Class Action Claims against Wells Fargo.  Pursuant to the indemnification provisions of the Line of Credit discussed above, any costs and expenses incurred by Wells Fargo in defending the Class Action Complaints are costs and expenses that are made a part of Wells Fargo's secured claim against the R.E. Loans' bankruptcy estate.  Further, to the extent that any of the Class Action Claims against Wells Fargo result in any liability or judgment against Wells Fargo, Wells Fargo is entitled to full indemnification of such liability or judgment from R.E. Loans, which would increase the secured claims against the R.E. Loans' bankruptcy estate.

54.    Due to the ongoing harm to the R.E. Loans' bankruptcy estate resulting from the legal expenses of Wells Fargo in defending the Class Action Complaints, and the continuing

harm to the R.E. Loans' bankruptcy estate that would result from any liability or judgment that is obtained against Wells Fargo in the Class Action Complaints, the Class Action Complaints need to be stayed, and the claims against Wells Fargo should be heard, if at all, by this Court in connection with the R.E. Loans' bankruptcy proceedings.  Allowing the Class Action Complaints to continue against Wells Fargo, which would dissipate the assets of the R.E. Loans' bankruptcy estate as a result of the indemnity obligations, would eviscerate the fundamental policy of requiring similarly situated creditors being treated equally within an organized and uniform bankruptcy proceeding and would otherwise cause duplicative, expensive, and burdensome litigation.

55.    Wells Fargo is named as a defendant in the Noble First Amended Complaint with respect to three (3) of the causes of action: (i) Aiding and Abetting Breach of Fiduciary Duty; (ii) Violation of Unfair Competition Law Business & Professional Code Section 17200; and (iii) Secondary Liability for Securities Fraud.  All of these claims asserted against Wells Fargo trigger the indemnity obligations of the Debtor R.E. Loans to cover the defense costs that Wells Fargo incurs and any underlying liability or judgment entered against Wells Fargo in the Noble Class Action as described above.  As a result, prosecuting the claims against Wells Fargo in the Noble Class Action is tantamount to a direct action against R.E. Loans and barred by § 362(a) of the Bankruptcy Code.

56.    Wells Fargo is named as a defendant in the Mendes First Amended Complaint with respect to three (3) of the causes of action: (i) Aiding and Abetting Fraud; (ii) Aiding and Abetting Breach of Fiduciary Duty; and (iii) Violation of Unfair Business Practices California Business & Professions Code Section 17200.  All of these claims asserted against Wells Fargo trigger the indemnity obligations of the Debtor R.E. Loans to cover the defense costs that Wells Fargo incurs and any underlying liability or judgment entered against Wells Fargo in the Mendes

Class Action as described above.  As a result, prosecuting the claims against Wells Fargo in the

Mendes Class Action is tantamount to a direct action against R.E. Loans and barred by § 362(a)

of the Bankruptcy Code.

57.    The allegations of the Class Action Complaints that relate to Wells Fargo describe

a series of events whereby Wells Fargo extended a $50 million line of credit to R.E. Loans in

July 2007, the proceeds of which are alleged to have been re-distributed to certain managers of

R.E. Loans in an unauthorized and self-dealing manner.  This same basic set of allegations gives

rise to each of the Class Action Claims asserted against Wells Fargo in both of the Class Action

Complaints.  If the allegations set forth in the Class Action Complaints were true, and damages

resulted from the self-dealing transactions, those damages would primarily be damages suffered

by R.E. Loans.  While ultimately, the Noteholders may also have suffered damages from these

alleged self-dealing transactions, any potential damages to the Noteholders would have been in

the form of an inability to collect on their notes due to the financial condition of R.E. Loans,

which was allegedly weakened by the self-dealing transactions described in the Class Action

Complaints.  Regardless, any damages awarded against Wells Fargo will trigger the indemnity

obligations that the Debtor R.E. Loans owes to Wells Fargo as described above.  Thus, even if

the Class Action Plaintiffs allege their own "direct" claims against Wells Fargo on the face of the

Class Action Complaints, the R.E. Loans' indemnity obligations owed to Wells Fargo cause

these Class Action Claims to constitute direct actions against R.E. Loans and barred by the

automatic stay under § 362(a) of the Bankruptcy Code.  Given that the allegations in the Class

Action Complaint center around the acts of R.E. Loans and Wells Fargo regarding the Line of

Credit as described above, coupled with the full indemnity obligations of R.E. Loans to Wells

Fargo and the fact that Wells Fargo was the primary lender of R.E. Loans leading up to the filing

of its bankruptcy case, and continues to provide R.E. Loans with post-petition financing as the

parties work towards confirming a plan of reorganization within the underlying bankruptcy proceedings, Wells Fargo and R.E. Loans are so intertwined that a stay of the Class Action Claims against Wells Fargo is proper until R.E. Loans has confirmed its plan of reorganization.

58.    The Class Action Complaints describe in detail the ways that the Debtor R.E. Loans was injured by its management in support of the Class Action Claims.  For example, Paragraph 91 of the Mendes First Amended Complaint states that:

> On July 17, 2007, the same day the Wells Fargo Loan was closed, R.E. Loans' managers drew $43,624,663 from the $50,000,000 line.  Of this, $22,039,072.58 was used by R.E. Loans' managers, B-4 Partners, and BAR-K to continue cash disbursements to preferred investors, to make unauthorized and unwarranted payments to themselves, and for other unlawful and/or improper purposes.  Plaintiffs are informed an[d] believe that $2,000,000 of the initial draw from the line of credit was paid to Barney Ng as an undisclosed finder's or origination fee for the Wells Fargo Loan.

See Mendes First Amended Complaint at ¶ 91.

59.    Further, paragraph 94 of the Mendes First Amended Complaint, addressing the alleged breaches of fiduciary duty states that:

> R.E. Loans' managers engaged in the following activities and thereby violated their fiduciary duties to R.E. Loans' investors [by]…(4) immediately drawing down nearly the entire secret Line of Credit and misappropriating the funds in self-dealing transactions; and (5) bringing about the illiquidity of the Fund through mismanagement, self-dealing, preferential distributions, and other secret and unauthorized activities.

See Mendes First Amended Complaint at ¶ 94.

60.    The paragraphs quoted above allege certain self-dealing transactions undertaken by the managers of R.E. Loans associated with the proceeds of the Wells Fargo Line of Credit. To the extent that Wells Fargo is liable under an "aiding and abetting breach of fiduciary duty" theory, such aiding and abetting claim must be based on the underlying breach of fiduciary duties owed to the Debtor R.E. Loans allegedly carried out by its management -- namely B-4, Bar-K,

Horwitz, Walter Ng, Barney Ng, and/or Kelly Ng -- in association with the Wells Fargo loan transaction. To the extent that these allegations are true and give rise to damages, such damages are first and foremost recoverable by R.E. Loans against the Managers of R.E. Loans.

61. While the paragraphs above specifically reference the alleged breach of fiduciary duties by the Managers of R.E. Loans, the same principle would apply to the claim in the Mendes First Amended Complaint against Wells Fargo for aiding and abetting fraud because **the claim relates to the same set of underlying facts and could have been raised by R.E. Loans as of the commencement of the bankruptcy case**.

62. The remaining claims contained in the Class Action Complaints against Wells Fargo for Secondary Liability for Securities Fraud and Violations of the Unfair Business Practices/Competition Law Section 17200 do not contain any independent allegations to support these claims. Rather, these claims are based on the same allegations in support of the Aiding and Abetting Breach of Fiduciary Duty claim as described above. As a result, all Class Action Claims against Wells Fargo (i) in essence amount to merely an aiding and abetting a breach of fiduciary duty claim, (ii) could have been raised by R.E. Loans as of the Petition Date, (iii) constitute property of the R.E. Loans' bankruptcy estate, and/or (iv) trigger the indemnity obligations owed by R.E. Loans to Wells Fargo as described above so that prosecution of these claims against Wells Fargo is tantamount to an action against R.E. Loans and its bankruptcy estate.

63. Being property of R.E. Loans' bankruptcy estate, the pursuit of these claims by the Class Action Plaintiffs in Alameda County, California Superior Court should be stayed by virtue of 11 U.S.C. § 362(a)(3).

64. Moreover, the claims in the Class Action Complaints related to fraud and breach of fiduciary duty appear to be predicated on some sort of alter ego theory. For example,

Paragraphs 151 (under the heading FIRST CAUSE OF ACTION- Fraud- Intentional

Misrepresentation and False Promise), 177 (under the heading SECOND CAUSE OF ACTION-

Fraud- Concealment and Suppression of Fact) and 264 (under the heading SIXTH CAUSE OF

ACTION- Breach of Fiduciary Duty) of the Mendes First Amended Complaint state that

"Notwithstanding its purported existence as a separate entity, **R.E. Loans was in fact an alter**

**ego and joint venture partner of B-4 Partners, Bar-K, and the managers of those entities**,

all of whom acted in concert to control the business operations of R.E. Loans." (emphasis

added).

65.    To the extent that the Class Action Claims arise in connection with an "alter ego"

theory, then this may be another independent basis for this Court to decide whether these claims

are property of R.E. Loans' bankruptcy estate.

66.    The Bankruptcy Court is the best gatekeeper to decide whether the Class Action

Claims against Wells Fargo are property of R.E. Loans' bankruptcy estate and thus should be

stayed.  To the extent that any of the Class Action Claims against Wells Fargo is determined to

be solely direct claims of the Noteholders, including the Class Action Plaintiffs, and not property

of R.E. Loans' bankruptcy estate (notwithstanding the indemnity obligations or the fact that the

claims are based on an alter ego theory as described above), the claims should still be heard by

the Bankruptcy Court in the interest of judicial economy because they all arise out of the same

set of facts as the other claims that are property of the bankruptcy estate.  In doing so, it will

avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the

efficient and expeditious resolution of all matters connected to R.E. Loans.

67.    The series of transactions described above and the relationships of the parties

described herein are significantly intertwined with the R.E. Loans' bankruptcy case pending

before this Court.  In essence, the Class Action Plaintiffs allege that the Managers of R.E. Loans

first and foremost breached their fiduciary obligations to R.E. Loans by improperly entering in to the Line of Credit facility with Wells Fargo, improperly distributing funds to themselves, and failing to properly disclose these transactions to the Noteholders.  In doing so, the Class Action Plaintiffs allege that the Managers of R.E. Loans also breached their fiduciary duties to the Noteholders.  Thus, the threshold issue involved in both the underlying bankruptcy proceedings and the Class Action Complaints is whether the Managers of R.E. Loans breached their underlying fiduciary duties to R.E. Loans.

68.    The most efficient, and cost effective way to untangle this complicated web is within the context of the R.E. Loans' bankruptcy proceedings.  Indeed, the central figure in each of the claims set forth in the Class Action Complaints is R.E. Loans.  As a result, if the Class Action Complaints are not stayed, all of the parties, including the Debtor R.E. Loans itself, would be subject to duplicative, expensive, and burdensome litigation, including substantial costs of discovery, related to the Class Action Complaints.  Furthermore, R.E. Loans may also suffer damage from inconsistent rulings and the potential consequences involved with the doctrines of res judicata or collateral estoppel over litigating these issues within the Class Action Complaints without R.E. Loans as a named party.

69.    Allowing the Class Action Claims to continue against Wells Fargo threaten the property of the R.E. Loans' bankruptcy estate, burden and impede the reorganization effort, contravene the public interest, and may render any plan of reorganization futile.  The burden on the R.E. Loans' bankruptcy estate substantially outweighs any burden on the Class Action Plaintiffs caused by enjoining the Class Action Claims against Wells Fargo.  The evidence and underlying testimony presented in the Class Action Complaints will be substantially similar to the evidence and testimony presented in the R.E. Loans bankruptcy case and the interests of judicial economy are best served by having all of these interrelated issues heard together in the

same Court, especially in light of the indemnification obligations that R.E. Loans owes to Wells

Fargo as described above.  That way, each of the competing interests can be considered together.

Wells Fargo respectfully requests that the Court issue an order staying the Class Action

Complaints and similar lawsuits that may be brought by Noteholders and hearing the claims set

forth in the Class Action Complaint in connection with the R.E. Loans' bankruptcy proceedings.

## X.

## CAUSES OF ACTION

**First Cause of Action:  Claim For Declaratory Judgment That The Class Action Claims
Against Wells Fargo Should Be Stayed Based On The Indemnity
Obligations Of R.E. Loans**

70.    Wells Fargo hereby incorporates all of the foregoing paragraphs in their entirety

by reference.

71.    R.E. Loans owes contractual indemnity obligations to Wells Fargo for all defense

costs and any liability or judgments entered against Wells Fargo as a result of any of the Class

Action Claims.  As a result, all of the Class Action Claims against Wells Fargo are subject to the

automatic stay of § 362(a) in that prosecuting the Class Action Claims against Wells Fargo is

tantamount to a direct claim against R.E. Loans and its bankruptcy estate.

72.    Wells Fargo requests a declaratory judgment declaring that the Class Action

Claims against Wells Fargo are subject to the automatic stay set forth in 11 U.S.C. § 362(a)

commencing upon the filing of R.E. Loans' petition in bankruptcy; and that all of the Class Action

Claims should proceed, if at all, only in connection with the underlying bankruptcy case of R.E.

Loans in this Court.

**Second Cause of Action:  Claim For Declaratory Judgment That The Class Action Claims
Against Wells Fargo Should Be Stayed Since Some or All of the Class Action Claims Are
Property Of The Bankruptcy Estate Of R.E. Loans Pursuant To 11 U.S.C. § 541**

73.     Wells Fargo hereby incorporates all of the foregoing paragraphs in their entirety
by reference.

74.     Some or all of the Class Action Claims could have been brought by R.E. Loans at
the commencement of its bankruptcy proceedings.  As a result, some or all of the Class Action
Claims against Wells Fargo (i) in essence amount to merely an aiding and abetting a breach of
fiduciary duty claim, (ii) could have been raised by R.E. Loans as of the Petition Date, and/or
(iii) constitute property of the R.E. Loans' bankruptcy estate.

75.     Wells Fargo requests a declaratory judgment declaring that some or all of the
Class Action Claims are property of the bankruptcy estate of R.E. Loans pursuant to
11 U.S.C. § 541, and as such, are subject to the automatic stay set forth in 11 U.S.C. § 362(a)(3)
commencing upon the filing of R.E. Loans' petition in bankruptcy; and that all of the Class Action
Claims should proceed, if at all, only in connection with the underlying bankruptcy case of R.E.
Loans in this Court.

**Third Cause of Action:  Application For Temporary Injunction
And Any Other Applicable Injunctive Relief That The Class Action Claims Against Wells
Fargo Should Be Stayed Based On The Indemnity Obligations Of R.E. Loans**

76.     Wells Fargo hereby incorporates all of the foregoing paragraphs in their entirety
by reference.

77.     R.E. Loans owes indemnity obligations to Wells Fargo for all defense costs and
any liability or judgments entered against Wells Fargo as a result of any of the Class Action
Claims.  As a result, all of the Class Action Claims against Wells Fargo are subject to the
automatic stay of § 362(a) in that prosecuting the Class Action Claims against Wells Fargo is
tantamount to a direct action against R.E. Loans and its bankruptcy estate.

78.     Wells Fargo seeks the entry of a temporary injunction (i) until R.E. Loans has confirmed its plan of reorganization and there is a clear delineation within the confirmed plan as to who will prosecute claims owned by the R.E. Loans' bankruptcy estate and claims owned by the Noteholders, including the Class Action Plaintiffs, pursuant to applicable injunctive relief pursuant to sections 362(a) and 105(a) of the Bankruptcy Code, and 28 U.S.C. 1334; and (ii) enjoining the continued prosecution of the Class Action Claims against Wells Fargo and enjoining the Defendants and any other party from commencing or continuing any lawsuit or proceeding against Wells Fargo based on the allegations contained in the Class Action Complaints.  Wells Fargo further seeks the entry of an order that any claims against Wells Fargo related to the Line of Credit with R.E. Loans should proceed, if at all, only in connection with the underlying bankruptcy case of R.E. Loans in this Court.

79.     This injunctive relief is necessary and appropriate because (i) the Class Action Claims against Wells Fargo threaten to adversely affect the interests of the Debtor R.E. Loans, (ii) there is a likelihood of success on the merits on the relief sought herein by Wells Fargo, (iii) granting the injunctive relief does not contravene the public interests, (iv) Wells Fargo does not have an adequate remedy at law, and/or (v) Wells Fargo would suffer irreparable harm if the requested relief is not granted.

**Fourth Cause Of Action:  Application For Temporary Injunction
And Any Other Applicable Injunctive Relief That The Class Action Claims Against Wells
Fargo Should Be Stayed Because Some Or All Of The Class Action Claims Are Property
Of The Bankruptcy Estate Of R.E. Loans Pursuant To 11 U.S.C. § 541**

80.     Wells Fargo hereby incorporates all of the foregoing paragraphs in their entirety by reference.

81.     Some or all of the Class Action Claims could have been brought by R.E. Loans at the commencement of its bankruptcy proceedings.  As a result, all of the Class Action Claims

against Wells Fargo (i) in essence amount to merely an aiding and abetting a breach of fiduciary duty claim, (ii) could have been raised by R.E. Loans as of the Petition Date, and/or (iii) constitute property of the R.E. Loans' bankruptcy estate.

82.     Wells Fargo seeks the entry of a temporary injunction (i) until R.E. Loans has confirmed its plan of reorganization and there is a clear delineation within the confirmed plan as to who will prosecute claims owned by the R.E. Loans' bankruptcy estate and claims owned by the Noteholders, including the Class Action Plaintiffs, pursuant to applicable injunctive relief pursuant to section 362(a) and 105(a) of the Bankruptcy Code, and 28 U.S.C. 1334, (ii) enjoining the continued prosecution of the Class Action Claims against Wells Fargo and enjoining Defendants and any other party from commencing or continuing any lawsuit or proceeding against Wells Fargo based on the allegations contained in the Class Action Complaints.  Wells Fargo further seeks the entry of an order that any Class Action Claims against Wells Fargo related to the Line of Credit with R.E. Loans should proceed, if at all, only in connection with the underlying bankruptcy case of R.E. Loans in this Court.

83.     This injunctive relief is necessary and appropriate because (i) the Class Action Claims against Wells Fargo threaten to adversely affect the interests of the Debtor R.E. Loans, (ii) there is a likelihood of success on the merits on the relief sought herein by Wells Fargo, (iii) granting the injunctive relief does not contravene the public interests, (iv) Wells Fargo does not have an adequate remedy at law, and/or (v) Wells Fargo would suffer irreparable harm if the requested relief is not granted.

## Attorneys' Fees

84.     Wells Fargo hereby incorporates all of the foregoing paragraphs in their entirety by reference.

85.     As a result of the need to bring this action, Wells Fargo has retained the undersigned counsel and has agreed to pay its reasonable attorneys' fees.  Wells Fargo is entitled to its reasonable and necessary attorneys' fees pursuant to the indemnity obligations of the Debtor R.E. Loans and other applicable law.  As a result, Wells Fargo seeks a judgment for Wells Fargo's reasonable and necessary attorneys' fees incurred in connection with this action and in defending the Class Action Claims and any other related claims.

**WHEREFORE,** Plaintiff Wells Fargo Capital Finance, LLC requests that this Court enter a judgment in its favor and against the Defendants as follows:

A.     Declaring that based on the indemnity obligations of R.E. Loans, the Class Action Claims against Wells Fargo are subject to the automatic stay set forth in 11 U.S.C. § 362(a) commencing upon the filing of R.E. Loans' petition in bankruptcy; and that all of the Class Action Claims should proceed, if at all, only in connection with the underlying bankruptcy case of R.E. Loans in this Court;

B.     Declaring that some or all of the Class Action Claims are property of the bankruptcy estate of R.E. Loans pursuant to 11 U.S.C. § 541, and as such, are subject to the automatic stay set forth in 11 U.S.C. § 362(a)(3) commencing upon the filing of R.E. Loans' petition in bankruptcy;

C.     With the entry of a temporary injunction until R.E. Loans has confirmed its plan of reorganization and there is a clear delineation within the confirmed plan as to who will prosecute claims owned by the R.E. Loans' bankruptcy estate and claims owned by the Noteholders, including the Class Action Plaintiffs, and/or the entry of other applicable injunctive relief, enjoining the Class Action Claims against Wells Fargo and any similar suits to be brought

by Noteholders from proceeding against Wells Fargo in Alameda County, California Superior

Court or in any other jurisdiction other than this Court;

D.      Declaring that the Class Action Claims and any other similar claims against Wells

Fargo should proceed, if at all, only in connection with the underlying bankruptcy case of R.E.

Loans in this Court;

E.      Awarding Wells Fargo its reasonable and necessary attorneys' fees in connection

with this action and in defending the Class Action Claims; and

F.      Awarding Wells Fargo such other relief, at law or in equity, to which it may be

justly entitled.

**DATED:**  November 28, 2011

Respectfully submitted,

**K&L GATES LLP**

By: /S/ John E. Garda
    David Weitman, Esq.
    State Bar No. 21116200
    John E. Garda, Esq.
    State Bar No. 00793780
    1717 Main Street, Suite 2800
    Dallas, Texas 75201
    Telephone: (214) 939-5500
    Facsimile: (214) 939-6100

**ATTORNEYS FOR WELLS FARGO
CAPITAL FINANCE, LLC**